Good morning, your honors, counsel. I'm Richard Schoenberg. I represent the appellant, Antonio Santamaria. In this case, Mr. Santamaria complains of the decision of the Illinois Workers' Compensation Commission that denied him benefits for a permanent and total disability arising out of an occupational lung disease. The Commission adopted the opinion of Dr. Moiseon, that was Respondent's medical expert, as it was contained in his July 27, 2004, report and specifically found that he suffers from a severe functional disability but was able to function at a sedentary level in an environment free of significant irritants, though recurrent illness may preclude work on specific days. On this evidence, the Commission awarded a 75% man as a whole. Although the issue was raised on appeal, the Commission did not comment on Mr. Santamaria's vocational rehabilitation evidence, and that evidence, we believe, showed that he was, that demonstrated that there was no reasonable, stable labor market available to him within those restrictions. The Commission adopted all the findings of the arbitrator other than those that it specifically reversed. The arbitrator did address the vocational evidence, and it's discussed Mr. Santamaria's expert, David Patsavis. He had authored a report of February 16, 2005, and in that report, based on the restrictions that were stated in the Commission's decision that he was reduced to a sedentary level, gave the opinion that there was no reasonable labor market available to him. So is he fond of, your theory is the ADLAT theory, as it's been termed? That's correct, Your Honor. How old is he? Today he is approximately 25. He's in his early 20s. Early 20s? I may have that wrong. He was a young man. I think he was 20 when he had this disease. The arbitrator rejected the opinion of Mr. Patsavis on, as far as I can tell, only one Mr. Santamaria was capable of work not at the sedentary level, but at the sedentary light level. The arbitrator rejected the opinions of Respondent's vocational expert because they did not take into consideration Mr. Santamaria's need to avoid exposure to respiratory irritants. So what we have left is the arbitrator's award rejecting Mr. Santamaria's vocational evidence because it was based on the wrong work capacity level, and then the Commission saying that the work capacity level that the expert based his opinion on was the correct level. Well, reduced to the simplest terms, don't you sort of have a battle of credibility between the claimant's doctors, his evidence, and the Respondent's experts, Respondent's employees? I mean, they've got Dr. Moysen saying that even though he can no longer perform the duties of the job, he's capable of performing sedentary light tasks, office assembly work, light assembly work, and environment-free of the irritants. Then you've got Flaherty. Why couldn't the Commission determine that the Respondent's witnesses were more credible and more believable? Well, Your Honor, obviously, it's an analysis of the expert's opinion. And just to take it off the table, obviously, the opinions of the treating doctor are off the table. The arbitrator did not – the arbitrator, neither arbitrator nor Commission, accepted the opinion of the treating doctor, so we're stuck with Dr. Moysen. Dr. Moysen expresses an opinion in 2004 and then another opinion in 2006. And the arbitrator analyzed the vocational evidence in the context of the 2006 and 2004, frankly, based on both of those opinions. His analysis of the vocational evidence presented by the Respondent did not take into account that Mr. Santamaria needed to be – needed to avoid exposure to irritants. The Commission accepted that by saying that we are affirming the Commission, the arbitrator's decision, other than as we've stated here. So I think that the Commission could have said we will accept the opinions – we find the opinions of the vocational experts of Respondent more credible, but they didn't. They said that we think the correct standard here is sedentary capacity and we're affirming as to all other issues. And I think that the Commission, having made these findings, is bound by the – by the law as it applies to those findings. If they find that his level is sedentary and the only reason that the arbitrator rejected Petitioner's vocational counselor's opinion was because it was based on a sedentary level, then I think that it flows that they are bound to say that he met his burden of proof. Now, it would be – I've read better – I mean, it's a – the Commission could have provided analysis of vocational evidence. They chose not to. And so we have two decisions that are in conflict, but I think that – What are the two decisions? Well, the decisions are we have the Commission saying that it's a sedentary level and based on a sedentary level, we find that Petitioner didn't meet his burden of proof, but they don't address the vocational evidence and adopt the findings of the arbitrator. Well, wait a minute. Whose findings are we reviewing? The Commission or the arbitrator? We're not reviewing the Commission's decision, but the Commission, in part, says that – says that we are affirming as to the other issues. So if they don't address the arbitrator's findings – Do they have to specifically address that to avoid a reversal? Are you saying that – They don't have to specifically address it, but I think they are – if they're saying we're affirming the arbitrator as to anything we're not discussing, then they're affirming the arbitrator as to everything else they're not discussing. Did you call it to their attention? Yes, we did. How? Well, in our briefs and in our argument before – actually, in our briefs before the Commission because the Commission denied our request for oral argument. So do you have some case law that supports the proposition that you just stated? I do not. It's – I think it's – it's – if the – I think the order speaks for itself. If we are adopting the findings and conclusions except as below, then those are the findings. Now, you're saying by implication, but you have no legal authority that binds us to that conclusion, do you? Well, only to the extent that we have to read the decision as it's written, which says we're – we're affirming the arbitrator as to his findings and conclusions other than what we've stated. So I think following the order, that's the result. What did Ms. Flaherty have to say? Well, Ms. Flaherty offered a report in which she identified essentially the same types of employment that – respond to the second expert, Mr. Boccaccio, I can't pronounce his name, and was saying, well, he can work at a McDonald's, and he can work – and identify places that the arbitrator felt did not take into account his need to avoid exposure to respiratory irritants. Counsel, please. Okay. Please, the Court, Counsel, Your Honors, my name is Matthew Novak. I represent Roe Light Products in this appeal. Before I begin, is there any questions for me? Simply put, I see this as a manifest weight issue as to whether the Commission's decision is against the manifest weight of the evidence on its permanency finding. As you know, the Commission found that the petitioner was permanently and partially impaired to 75 percent loss of use under Section 8D2. It is my position that evidence is – or that finding is supported by evidence that record, and therefore, under the manifest weight of the evidence that it should be affirmed. First of all, do we have medical evidence that the petitioner, Mr. Santamaria, was capable of working? Yes, we do. The primary evidence is Dr. Moysen's opinions, who he finds the petitioner is capable of working at a sedentary and or light-duty level. Now, there are other qualifications that Dr. Moysen puts onto that restriction, which are, you know, basically he has to work in an environment free of significant irritants or allergens, and he has to be able to – or be limited to occasional walking. This basically placed him at the sedentary light level, but it's still evidence that he is capable of performing some type of work, or at least has some skills of work. The next step is that the Commission looked at the opinions of Dr. Cohen. Now, Dr. Cohen did give an opinion in January of 2006, where he says that the petitioner is permanently and totally incapacitated from working. However, two years after that, Dr. Cohen continues to note what he calls improvement in the petitioner's condition. In fact, I believe there was a 2007 pulmonary function test, which Dr. Cohen noted to show significant improvement in the petitioner's condition. Well, so I think, cutting to the case, you can certainly make the argument there's some evidence in the record to support the Commission's decision. What do you make of opposing counsel's argument there's some sort of a legal as well as a logical inconsistency in what the Commission did in adapting the findings of the arbitration? How do you respond to that argument? I disagree, and here's why. I think opposing counsel's argument has a keystone position, which is that the Commission modified the arbitrator's decision to say that there was a specific finding on his ability to work, which is a sedentary level. I don't think that the Commission did that. The Commission's decision specifically says that they are adopting and affirming unless modified, as stated below. And they go on to recite some of the evidence in the record, including Dr. Moisen's 2004 IME findings, but they go on and specifically modify only one thing about the arbitrator's decision, which is the permanency award. They don't specifically come in and say we modify the arbitrator's decision to find that the petitioner can only work at a sedentary level. They don't say that. They do recite evidence from Dr. Moisen's report to, I guess, back up their decision to increase the permanency award, but they don't make a specific finding in their decision that says that the petitioner can only work at a sedentary level. So they're only making findings they feel are necessary to support the decision. They're not really feeling necessary to go into the things that he's suggesting they should have gone into. Right. That's how I see the Commission's decision. So what does the Commission mean by the statement, Petitioner with severe functional disability was able to function at a sedentary level in an environment free of significant irritants through recurrent illness may preclude work on specific days. No, that is, as I see it, Your Honor, I see it as a summary of Dr. Moisen's opinion. That is essentially the words taken from Dr. Moisen's IME report. So does that answer your question, Your Honor? The reason why I ask the question is because earlier in the same paragraph they did outline what Moisen said in his report, that the petitioner had an ongoing disability and he was able to perform at a sedentary level. So you think it's just a redundancy? I think it's actually a continuation of Dr. Moisen's findings. That's at least how I read it because the phrasing is almost identical to Dr. Moisen's report. I know exactly what you're referring to. That last sentence on the first page. I think that, as indicated by Dr. Moisen, I think that whole remainder of that paragraph is a summary of Dr. Moisen's findings as opposed to specific findings of the petitioner's ability to return to work. So in any event, even assuming the petitioner is still only capable of doing sedentary work, there's still evidence in the record from a vocational standpoint that there are jobs available within a reasonable, stable labor market that the petitioner could work in. And that comes primarily in the report of Ms. Flaherty. As the arbitrator pointed out, there are several positions outlined by Ms. Flaherty which the petitioner could return to work. And the arbitrator noted that many of these would be no more difficult or significant than the petitioner engaging in his activities of daily living. I know that counsel relies on the report of Dr. Patsavas, not Dr. Patsavas, Mr. Patsavas, for the proposition that the petitioner is permanently and totally disabled. However, Mr. Patsavas provides no analysis as to why the specific jobs pointed out by Ms. Flaherty are, in fact, contrary to the petitioner's restrictions. Furthermore, it seems to me from Mr. Patsavas' report and as noted by the arbitrator in his decision that Mr. Patsavas seemed to rely on the early medical evidence in the record, which is, you know, I'd say 2005 and before. And certainly there are periods of time before 2005 where the petitioner was much more impaired. However, he continued to show improvement throughout the course of his treatment up until 2008 when the case was tried. And therefore, I think that's why the arbitrator did not find the report of Mr. Patsavas credible. In any event, we're reviewing the findings of the commission. That's true. And the reason why I point to the arbitrator's decision is because they, at least in this event, I think, adopt and affirm the arbitrator's findings in this regard. So that's why I refer to it, because that's where you'll see the language. Well, can you tell us succinctly what evidence in the record supports the commission's finding, just listed? I mean – Yeah, sure. There's the opinion of Dr. Moisen, who says he can return to full duty and there's – or not full duty, but sedentary duty and or light duty. And there's reports of Ms. Flaherty and Mr. Boccaccio, who say that there is a reasonably stable labor market for him to return to. Which the commission can obviously rely on. It's their decision to make. Yes. Okay. If that's all I have, Your Honors. If there are any more questions for me, I'll rest. Thank you, Counselor Rubato. Thank you. Very briefly, I agree that the commission doesn't have to articulate its consideration of vocational evidence in order for it to be relied upon in the commission's decision, except that, again, reading the decision, they are accepting and affirming the arbitrator's decision as to those facts that they don't specify in their decision. And I do believe that the sentence that Your Honor has read, he recites Dr. Moisen's – the commission recites Dr. Moisen's report, and then, I believe, finds that he is severe – he has a severe functional disability, but was able to function at a sedentary level in an environment free of significant irritants. That, I think, is a finding. And it obviously takes the place of the finding of the arbitrator. The only reason the arbitrator states that he rejected Mr. Patsavis's opinion is that it was based on a sedentary work restriction. And I think that an analogy can be drawn, and this is the analogy that I think applies, is that if it was a defense that the Petitioner was not exposed to an irritant, and the arbitrator found that there was airborne irritant here, but the Petitioner wasn't exposed because they gave him a mask and denies exposure or rejects exposure, and the commission in this decision says, we find that there was no mask, and otherwise affirms the arbitrator, that the findings that are made compel the conclusion that there was an exposure. Thank you. The court will take the matter under assignment for disposition.